AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN _____ **DISTRICT OF** _____ NEW YORK

*ECF CASE*

ORIX FINANCIAL SERVICES, INC., formerly
known as ORIX CREDIT ALLIANCE, INC.,

**SUMMONS IN A CIVIL CASE**

**V.**

MECUM TRANSIT, INC., and KIMBERLY.
MECUM a/k/a KIM MECUM,

CASE NUMBER *Judge Casey*

*04 CV 3728*

**TO:** (Name and address of defendant)

MECUM TRANSIT                    KIMBERLY MECUM
1925 FM 362                      22918 Walderford Drive
Brookshire, Texas 77423          Katy, Texas 77450

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

DAVIDOFF MALITO & HUTCHER, LLP
605 Third Avenue, 34th floor
New York, New York 10158

an answer to the complaint which is herewith served upon you, within ____twenty (20)____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

[MAY 1 7 2004

CLERK                                          DATE

*Melanie L. Lopez*

(BY) DEPUTY CLERK

04 CV 3728

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

ORIX FINANCIAL SERVICES, INC., formerly
known as ORIX CREDIT ALLIANCE, INC.,

                    Plaintiff,

        - against -

MECUM TRANSIT, INC., and KIMBERLY MECUM a/k/a
KIM MECUM,

                    Defendants.

-------------------------------------------------------------------------X

**CERTIFICATE PURSUANT TO RULE 7.1**

Judge Casey

ECF CASE

RECEIVED
MAY 17 2004
U.S.D.C. S.D. N.Y.
CASHIERS

        Pursuant to Rule 7.1 of the General Rules of the Southern District of New York and to enable judges and magistrates of the Court to evaluate possible disqualifications or refusal, the undersigned attorney of record for ORIX FINANCIAL SERVICES, INC., formerly known as ORIX CREDIT ALLIANCE, INC., certifies that the following are corporate parents, subsidiaries, or affiliates of that party:

        Plaintiff, ORIX FINANCIAL SERVICES, INC., formerly known as ORIX CREDIT ALLIANCE, INC., is a wholly owned subsidiary of ORIX COMMERCIAL ALLIANCE CORPORATION which itself is a wholly owned subsidiary of ORIX USA Corporation. All of these companies are part of the ORIX Group which is controlled by the ORIX Corporation, a publicly traded company in Japan. Plaintiff itself has no subsidiaries or affiliates the securities of which are publicly traded.

Dated: New York, New York
       May 17, 2004

                                  LEWIS M. SMOLEY - LS4613

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ECF CASE**

---------------------------------------------------------------X

ORIX FINANCIAL SERVICES, INC., formerly
known as ORIX CREDIT ALLIANCE, INC.,

**04 CV   3728**

        Plaintiff,

**COMPLAINT**

- against -

MECUM TRANSIT, INC., and KIMBERLY MECUM a/k/a
KIM MECUM,

        Defendants.

---------------------------------------------------------------X

Plaintiff ORIX FINANCIAL SERVICES, INC., formerly known as ORIX CREDIT

ALLIANCE, INC., by its attorneys, DAVIDOFF MALITO & HUTCHER LLP, complaining of the

Defendants, MECUM TRANSIT, INC., and KIMBERLY MECUM, a/k/a KIM MECUM,

respectfully alleges the following:

### JURISDICTION FACTS

1.      The jurisdiction of this action is based upon diversity of citizenship. 29 U.S.C 1332.

The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2.      Plaintiff, ORIX FINANCIAL SERVICES, INC. ("OFS" or "plaintiff"), formerly

known as ORIX CREDIT ALLIANCE, INC. ("OCAI"), is a New York corporation maintaining its

principal place of business at 600 Town Park Lane, Kennesaw, Georgia, 30144.

3.      Upon information and belief, defendant, MECUM TRANSIT, INC. ("MECUM"),

is a Texas corporation maintaining its principal place of business in the state of Texas.

4.      Upon information and belief, defendant, KIMBERLY MECUM, a/k/a KIM MECUM

("KIM MECUM") is a resident of the state of Texas.

DM:00307166.1

5.    Venue in the County of New York, State of New York, is based upon a contractual agreement thereto among the defendants and the plaintiff as set forth in the various Promissory Notes and Guaranties executed by the defendants and referred to hereinafter.

## FOR A FIRST CLAIM AGAINST DEFENDANT MECUM

6.    On or about September 18, 1997, Defendant, MECUM, as the Maker named therein, entered into and executed a certain Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 1", payable to the order of OCAI in the face amount of $48,288.00, in consideration for OCAI's financing of the purchase of one (1) 1998 Wabash Refrigerated Trailer, serial number 1JJE482S0WL382195 and one (1) 1998 Carrier Ultra Unit, serial number FAA90386159 (hereinafter referred to jointly as "Equipment 1"). Under the terms of Note 1, MECUM granted to OCAI a purchase money security interest in Equipment 1 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 1. A true copy of Note 1 is annexed hereto, made part hereof and marked as Exhibit "A".

7.    On September 26, 2000, the name of ORIX CREDIT ALLIANCE, INC. ("OCAI") was changed to that of ORIX FINANCIAL SERVICES, INC. ("OFS"). By reason of this change of name, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 1, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

8.    MECUM defaulted under the terms of Note 1 by failing to pay the monthly installment payment due and payable thereunder on April 18, 2001, and on the 18th day of each month thereafter, as and when such monthly payments became due and payable under Note 1. As

a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 1.

9.    Pursuant to the terms and conditions of Note 1, as of April 18, 2001, there is due and owing to OFS from MECUM the sum of $5,831.14, plus default interest from April 19, 2001 at the Past Due Rate as set forth in Note 1, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under Note 1, no part of which has been paid, although duly demanded.

## FOR A SECOND CLAIM AGAINST DEFENDANT MECUM

10    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "9" with the same force and effect as if fully set forth herein.

11.    On or about January 5, 1998, Defendant, MECUM as the Maker named therein, entered into and executed a second Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 2", payable to the order of OCAI in the face amount of $51,408.00, in consideration for OCAI's financing of the purchase of one (1) 1998 Wabash Refrigerated Van Trailer, serial number 1JJVS32WXWL443703 equipped with one (1) Carrier Ultra Refrigeration Unit, serial number FAJ90405864 (hereinafter referred to jointly as "Equipment 2"). Under the terms of Note 2, MECUM granted to OCAI a purchase money security interest in Equipment 2 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 2. A true copy of Note 2 is annexed hereto, made part hereof and marked as Exhibit "B".

12.    By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 2, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

13.    MECUM defaulted under the terms of Note 2 by failing to pay the monthly installment payment due and payable thereunder on May 4, 2001, and on the 4th day of each month thereafter, as and when such monthly payments became due and payable under Note 2. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 2.

14.    Pursuant to the terms of Note 2, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 2.

15.    On February 8, 2002, OFS held a public sale of Equipment 2 in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, Equipment 2 was sold for a gross purchase price of $10,000.00. Pursuant to the terms of Note 2 and applicable law, OFS deducted from said gross purchase price the amount of $7,232.95, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $2,767.05, from the balance owing on the account of MECUM with OFS relating to Note 2.

16.    Pursuant to the terms and conditions of Note 2, as of February 8, 2002, there is due and owing to OFS from MECUM the sum of $7,183.85, plus default interest from February 9, 2002 at the Past Due Rate as set forth in Note 2, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 2, no part of which has been paid, although duly demanded.

## FOR A THIRD CLAIM AGAINST DEFENDANT MECUM

17.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "16" with the same force and effect as if fully set forth herein.

18.    On or about May 20, 1998, MECUM as the Maker named therein, entered into and executed a third Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 3", payable to the order of OCAI in the face amount of $166,680.00, in consideration for OCAI's financing of the purchase of three (3) 1998 Wabash Reefer Trailers, serial numbers 1JJV532W7WL506806, 1JJV532W9WL506807, and 1JJV532W2WL506809, equipped with a Carrier Transicold Ultima Units, serial numbers FAP90420933, FAP90420858, and FAP90420872 (hereinafter referred to collectively as "Equipment 3"). Under the terms of Note 3, MECUM granted to OCAI a purchase money security interest in Equipment 3 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 3. A true copy of Note 3 is annexed hereto, made part hereof and marked as Exhibit "C".

19.    By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 3, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

20.    MECUM defaulted under the terms of Note 3 by failing to pay the monthly installment payment due and payable thereunder on April 20, 2001, and on the 20th day of each month thereafter, as and when such monthly payments became due and payable under Note 3. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 3.

21.    Pursuant to the terms of Note 3, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 3.

22.    On February 8, 2002, OFS held a public sale of four items of Equipment 3, specifically, two (2) 1998 Wabash Reefer Trailers, serial numbers 1JJV532W7WL506806, and

1JJV532W2WL506809, and two (2) Carrier Transicold Ultima Units, serial numbers FAP90420933 and FAP90420858, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, said four items of Equipment 3 were sold at a gross purchase price of $28,500.00. Pursuant to the terms of Note 3 and applicable law, OFS deducted from the gross purchase price received for the sale of Equipment 3 the amount of $5,399.97, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $23,100.03, from the balance owing on the account of MECUM with OFS relating to Note 3.

23.     Pursuant to the terms and conditions of Note 3, as of February 8, 2002, there is due and owing to OFS from MECUM the sum of $44,213.79, plus default interest from February 9, 2002 at the Past Due Rate as set forth in Note 3, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 3, no part of which has been paid, although duly demanded.

## FOR A FOURTH CLAIM AGAINST DEFENDANT MECUM

24.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "23" with the same force and effect as if fully set forth herein.

25.     On or about June 1, 1998, MECUM as the Maker named therein, entered into and executed a fourth Promissory Note-Security Agreement (Motor Vehicle), hereinafter referred to as "Note 4", payable to the order of OCAI in the face amount of $55,560.00, in consideration for OCAI's financing of the purchase of one (1) 1998 Wabash Reefer Trailer, serial number 1JJV532W9WL506808, with Carrier Transicold Ultima Unit, serial number FAP90420870 (hereinafter referred to jointly as "Equipment 4"). Under the terms of Note 4, MECUM granted to

OCAI a purchase money security interest in Equipment 4 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 4. A true copy of Note 4 is annexed hereto, made part hereof and marked as Exhibit "D"

26.    By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 4, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

27.    MECUM defaulted under the terms of Note 4 by failing to pay the monthly installment payment due and payable thereunder on May 2, 2001, and on the 2nd day of each month thereafter, as and when such monthly payments became due and payable under Note 4. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 4.

28.    Pursuant to the terms of Note 4, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 4.

29.    On March 1, 2002, OFS held a public sale of Equipment 4 in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, Equipment 4 was sold at a gross purchase price of $15,500.00. Pursuant to the terms of Note 4 and applicable law, OFS deducted from the gross purchase price received for the sale of Equipment 4 the amount of $1,515.50, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $13,984.50, from the balance owing on the account of MECUM with OFS relating to Note 4.

30.    Pursuant to the terms and conditions of Note 4, as of March 1, 2002, there is due and owing to OFS from MECUM the sum of $8,527.93, plus default interest from March 2, 2002 at the Past Due Rate as set forth in Note 4, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 4, no part of which has been paid, although duly demanded.

## FOR A FIFTH CLAIM AGAINST DEFENDANT MECUM

31.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "30" with the same force and effect as if fully set forth herein.

32.    On or about December 14, 1998, MECUM as the Maker named therein, entered into and executed a fifth Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 5", with Schedule "A" thereto and made part thereof, payable to the order of OCAI in the face amount of $513,060.00, in consideration for OCAI's financing of the purchase of three (3) 1999 Peterbilt Model 379 Tractors, serial numbers 1XP5DR9X6XD465866, 1XP5DR9X8XD465867, and 1XP5DR9XXXD465868, and three (3) Wabash Refrigerated Trailers, serial numbers 1JJV532W3XL562551, 1JJV532W1XL562550, and 1JJV532W5XL562549 with three (3) Carrier Ultima Units, serial numbers FAV90443185, FAV90443184, and FAV90442810 (hereinafter referred to collectively as "Equipment 5"), all more thoroughly described in said Schedule "A". Under the terms of Note 5, MECUM granted to OCAI a purchase money security interest in Equipment 5 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 5. A true copy of Note 5 is annexed hereto, made part hereof and marked as Exhibit "E".

33.     By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 5, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

34.     MECUM defaulted under the terms of Note 5 by failing to pay the monthly installment payment due and payable thereunder on July 14, 2001, and on the 14th day of each month thereafter, as and when such monthly payments became due and payable under Note 5. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 5.

35.     Pursuant to the terms of Note 5, MECUM obtained an insurance policy on Equipment 5. Claims under said insurance policy were to be paid jointly to plaintiff and MECUM. MECUM submitted a claim of loss with regard to the destruction of one item of Equipment 5, specifically, one (1) 1999 Wabash Refrigerated Trailer serial number 1JJV532W1XL562550, with Carrier Ultima Unit serial number FAV90443184. An amount of $31,003.00 was paid by the insurer under said insurance policy in full and final settlement of said claim made thereunder. On or about January 28, 2002, plaintiff received this amount and applied it in reduction of the accelerated amount due by MECUM under Note 5.

36.     Pursuant to the terms of Note 5, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of the remainder of Equipment 5.

37.     On January 30, 2002, OFS held a private sale of one item of Equipment 5, specifically, one (1) Peterbilt Tractor serial number 1XP5DR9X6XD465866, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent

by OFS to each of the defendants. At said private sale, said item was sold for a gross purchase price of $33,000.00. Pursuant to the terms of Note 5 and applicable law, OFS deducted from the gross purchase price received for the sale of said item of Equipment 5 the amount of $9,456.76, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $23,543.24, from the balance owing on the account of MECUM with OFS under to Note 5.

38.    On February 8, 2002, OFS held a public sale of an additional four items of Equipment 5, specifically, two (2) Peterbilt Tractor serial numbers 1XP5DR9X8XD465867 and 1XP5DR9XXXD465868, and two (2) Wabash Trailers serial numbers 1JJV532W3XL562551 and 1JJV532W5XL562549 with Carrier units serial numbers FAV90443185 and FAV90442180, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, said items were sold for a purchase price of $81,500.00, which OFS credited to and deducted from the balance owing on the account of MECUM with OFS under to Note 5.

39.    Pursuant to the terms and conditions of Note 5, as of February 8, 2002, there is due and owing to OFS from MECUM the sum of $119,541.83, plus default interest from February 9, 2002 at the Past Due Rate as set forth in Note 5, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 5, no part of which has been paid, although duly demanded.

## FOR A SIXTH CLAIM AGAINST DEFENDANT MECUM

40.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "39" with the same force and effect as if fully set forth herein

41.     On or about February 17, 1999, Defendant MECUM as the Maker named therein, entered into and executed a sixth Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 6", payable to the order of OCAI in the face amount of $227,640.00, in consideration for OCAI's financing of the purchase of two (2) 1999 Peterbilt Tractors, serial numbers 1XP5DR9X1XD465869 and 1XP5DR9X8XD465870 (hereinafter referred to jointly as "Equipment 6"). Under the terms of Note 6, MECUM granted to OCAI a purchase money security interest in Equipment 6 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 6. A true copy of Note 6 is annexed hereto, made part hereof and marked as Exhibit "F".

42.     By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 6, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

43.     MECUM defaulted under the terms of Note 6 by failing to pay the monthly installment payment due and payable thereunder on April 15, 2001, and on the 15th day of each month thereafter, as and when such monthly payments became due and payable under Note 6. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 6.

44.     Pursuant to the terms of Note 6, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 6.

45.     On February 8, 2002, OFS held a public sale of Equipment 6 in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, Equipment 6 was sold for a gross purchase

price of $53,000.00. Pursuant to the terms of Note 6 and applicable law, OFS deducted from said gross purchase price the amount of $3,290.00, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $49,710.00, from the balance owing on the account of MECUM with OFS relating to Note 6.

46.    Pursuant to the terms and conditions of Note 6, as of February 8, 2002 there is due and owing to OFS from MECUM the sum of $70,566.15, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 6 and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 6, no part of which has been paid, although duly demanded.

### FOR A SEVENTH CLAIM AGAINST DEFENDANT MECUM

47.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "46" with the same force and effect as if fully set forth herein.

48.    On or about February 17, 1999, Defendant MECUM as the Maker named therein, entered into and executed a seventh Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 7", payable to the order of OCAI in the face amount of $114,600.00, in consideration for OCAI's financing of the purchase of two (2) 1999 Wabash Reefer Trailers, serial numbers 1JJV532W4XL548853 and 1JJV532W6XL548854, equipped with two (2) Carrier Ultima Units, serial numbers FAY904542343 and FAY904542345 (hereinafter referred to collectively as "Equipment 7"). Under the terms of Note 7, MECUM granted to OCAI a purchase money security interest in Equipment 7 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 7. A true copy of Note 7 is annexed hereto, made part hereof and marked as Exhibit "G".

49.    By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 7, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

50.    MECUM defaulted under the terms of Note 7 by failing to pay the monthly installment payment due and payable thereunder on May 1, 2001, and on the 1st day of each month thereafter, as and when such monthly payments became due and payable under Note 7. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 7.

51.    Pursuant to the terms of Note 7, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 7.

52.    On February 8, 2002, OFS held a public sale of certain items of Equipment 7, specifically, one (1) 1999 Wabash Reefer Trailer, serial number 1JJV532W6XL548854 with one (1) Carrier Ultima Unit serial number FAY904542345, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, said items were sold for a gross purchase price of $17,500.00. Pursuant to the terms of Note 7 and applicable law, OFS deducted from the gross purchase price received for the sale of Item 1 of Equipment 7 the amount of $2,378.38, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $15,121.62, from the balance owing on the account of MECUM with OFS relating to Note 7.

53.    On April 5, 2002, OFS held a public sale of the remaining items of Equipment 7, specifically, one (1) 1999 Wabash Reefer Trailer, serial number 1JJV532W4XL548853 with one (1)

Carrier Ultima Unit serial number FAY904542343, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, said items were sold for a gross purchase price of $15,500.00. OFS then credited to and deducted $15,500.00 from the balance owing on the account of MECUM with OFS relating to Note 7.

54.     Pursuant to the terms and conditions of Note 7, as of April 5, 2002, there is due and owing to OFS from MECUM the sum of $28,487.27, plus default interest from April 6, 2002 at the Past Due Rate as set forth in Note 7, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 7, no part of which has been paid, although duly demanded.

## FOR AN EIGHTH CLAIM AGAINST DEFENDANT MECUM

55.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "54" with the same force and effect as if fully set forth herein.

56.     On or about June 9, 1999, Defendant MECUM as the Maker named therein, entered into and executed an eighth Promissory Note - Security Agreement (Motor Vehicle) hereinafter referred to as "Note 8", payable to the order of OCAI in the face amount of $115,920.00, in consideration for OCAI's financing of the purchase of two (2) 1999 Wabash Reefer Trailers, serial numbers 1JJV532W3XL570942 and 1JJV532W9XL570945, each equipped with Carrier Ultima Unit, serial numbers FA290459698, and FA290459314 (hereinafter referred to collectively as "Equipment 8"). Under the terms of Note 8, MECUM granted to OCAI a purchase money security interest in Equipment 8 as collateral for all of the obligations of MECUM to OCAI whether then

existing or thereafter incurred or arising, as more fully set forth in Note 8. A true copy of Note 8 is annexed hereto, made part hereof and marked as Exhibit "H".

57.     By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 8, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

58.     MECUM defaulted under the terms of Note 8 by failing to pay the monthly installment payment due and payable thereunder on April 10, 2001, and on the 10th day of each month thereafter, as and when such monthly payments became due and payable under Note 8. As a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 8.

59.     Pursuant to the terms of Note 8, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 8.

60.     On February 8, 2002, OFS held a public sale of Equipment 8 in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, Equipment 8 was sold for a gross purchase price of $25,000.00. Pursuant to the terms of Note 8 and applicable law, OFS deducted from the gross purchase the amount of $2,828.38, representing OFS's costs and expenses relating to said sale. OFS then credited to and deducted the net amount of said purchase price, to wit, $22,171.62, from the balance owing on the account of MECUM with OFS relating to Note 8.

61.     Pursuant to the terms and conditions of Note 8, as of February 8, 2002, there is due and owing to OFS from MECUM the sum of $44,394.05, plus default interest from February 9, 2002 at the Past Due Rate as set forth in Note 8, and attorneys' fees in an amount equal to twenty percent

(20%) of all amounts due under and pursuant to the terms of Note 8, no part of which has been paid, although duly demanded.

### FOR A NINTH CLAIM AGAINST DEFENDANT MECUM

62.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number "1" through "61" with the same force and effect as if fully set forth herein.

63.    On or about July 16, 1999, Defendant MECUM as the Maker named therein, entered into and executed a ninth Promissory Note-Security Agreement (Motor Vehicle) hereinafter referred to as "Note 9", payable to the order of OCAI in the face amount of $115,920.00, in consideration for OCAI's financing of the purchase of two (2) 2000 Wabash National Trailers, serial numbers 1JJV53ZW3XL623224 and 1JJC532W3XL623221, each equipped with a Carrier Refer. Unit, serial numbers GAE90474095, and GAE90474084 (hereinafter referred to collectively as "Equipment 9"). Under the terms of Note 9, MECUM granted to OCAI a purchase money security interest in Equipment 9 as collateral for all of the obligations of MECUM to OCAI whether then existing or thereafter incurred or arising, as more fully set forth in Note 9.  A true copy of Note 9 is annexed hereto, made part hereof and marked as Exhibit "I".

64.    By reason of OCAI's change of name to that of OFS, referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI in, to and under Note 9, as well as to any and all other rights granted to OCAI in law or in equity relating thereto.

65.    Defendant MECUM defaulted under the terms of Note 9 by failing to pay the monthly installment payment due and payable thereunder on April 16, 2001, and on the 16th day of each month thereafter, as and when such monthly payments became due and payable under Note 9.  As

a result of said default, OFS accelerated the entire unpaid balance of all monthly installment payments due and to become due under Note 9.

66.    Pursuant to the terms of Note 9, subsequent to and predicated upon the above-mentioned default of MECUM, OFS located and peaceably took possession of Equipment 9.

67.    Pursuant to the terms of Note 9, MECUM obtained an insurance policy on Equipment 9. Claims under said insurance policy were to be paid jointly to plaintiff and MECUM. MECUM submitted a claim of loss with regard to the destruction of one item of Equipment 9, specifically, one (1) 2000 Wabash National Trailer, serial number 1JJV53ZW3XL623224, with Carrier Refer. Unit serial number GAE90474095. An amount of $32,353.00 was paid by the insurer under said insurance policy in full and final settlement of said claim made thereunder. Pursuant to an agreement between plaintiff and MECUM, plaintiff applied this amount in reduction of the amount owed by MECUM to plaintiff on another Promissory Note - Security Agreement, which is not the subject of this case, thereby eliminating the then remaining balance due under that Promissory Note - Security Agreement.

68.    On February 8, 2002, OFS held a public sale of another item of Equipment 9, specifically, one (1) 2000 Wabash National Trailer, serial number 1JJC532W3XL623221 with one (1) Carrier Refer. Unit serial number GAE90474084, in a commercially reasonable manner in accordance with applicable law and with prior written notice of said sale sent by OFS to each of the defendants. At said public sale, said item of Equipment 9 was sold for a gross purchase price of $16,250.00. Pursuant to the terms of Note 9 and applicable law, OFS deducted from the gross purchase price the amount of $1,400.00, representing OFS's costs and expenses relating to said sale.

OFS then credited to and deducted the net amount of said purchase price, to wit, $14,850.00, from the balance owing on the account of MECUM with OFS relating to Note 9.

69.    Pursuant to the terms of Note 9, as of February 8, 2002, there is due and owing to OFS from MECUM the sum of $53,372.32, plus default from February 9, 2002, at the Past Due Rate as set forth in Note 9, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 9, no part of which has been paid, although duly demanded.

### FOR A TENTH CLAIM BEING A
### FIRST CLAIM AGAINST DEFENDANT KIM MECUM

70.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "69" with the same force and effect as if fully set forth herein.

71.    On or about May 27, 1998, Defendant KIM MECUM executed and delivered to OCAI her personal and unconditional written Guaranty of payment and performance of all of the obligations of MECUM to OCAI, its successors and assigns, whether such obligations were then due and owing or thereafter arising or incurred, as set forth in said Guaranty, a true copy of which is annexed hereto made part hereof and as Exhibits "J".

72.    As a result of OCAI's name change to that of ORIX FINANCIAL SERVICES INC.("OFS") referred to in paragraph 7 hereinabove, OFS succeeded to all of the rights and interests of OCAI under the aforementioned personal and unconditional Guaranty of Defendant KIM MECUM, and all agreements, contracts, instruments and other documents relating thereto and all rights and interests arising thereunder.

73.    Pursuant to the terms of said Guaranty of Defendant KIM MECUM of all of the obligations of MECUM to OFS, said defendant is indebted to OFS for all amounts due and owing by MECUM to OFS under Notes 1 through 9 inclusive (the "Notes"), in the aggregate amount of $382,11.33, plus default interest and attorneys fees as follows:

- Under Note 1 in the amount of $5,831.14, plus default interest at the Past Due Rate as defined therein, from 4/19/01;

- Under Note 2 in the amount of $7,183.85, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 3 in the amount of $44,213.79, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 4 in the amount of $8,527.93, plus default at the Past Due Rate as defined therein, interest from 3/2/02;

- Under Note 5 in the amount of $119,541.83, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 6 in the amount of $70,566.15, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 7 in the amount of $28,487.27, plus default interest at the Past Due Rate as defined therein, from 4/6/02;

- Under Note 8 in the amount of $44,394.05, plus default interest at the Past Due Rate as defined therein, from 2/9/02; and

- Under note 9 in the amount of $53,372.32, plus default interest at the Past Due Rate as defined therein, from 2/9/02,

all of the above together with attorneys' fees in an amount equal to twenty percent (20%) of the aggregate amount of the respective balances due under the Notes as provided for therein, no part of which has been paid although duly demanded.

**WHEREFORE**, plaintiff demands judgment against the defendants as follows:

On the First Claim against Defendant MECUM, in the sum of $5,831.14, plus default interest from April 19, 2001 at the Past Due Rate as set forth in Note 1, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under Note 1; and

On the Second Claim against Defendant MECUM, in the sum of $7,183.85, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 2, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 2; and

On the Third Claim against Defendant MECUM, in the sum of $44,213.79, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 3, and attorneys' fees in an amount equal to twenty percent of all amounts due under and pursuant to the terms of Note 3; and

On the Fourth Claim against Defendant MECUM, in the sum of $8,527.93, plus default interest from March 2, 2002 at the Past Due Rate as set forth in Note 5, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 4; and

On the Fifth Claim against Defendant MECUM, in the sum of $119,541.83, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 5, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 5; and

On the Sixth Claim against Defendant MECUM, in the sum of $70,566.15, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 6, and attorneys' fees in an

amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 6; and

On the Seventh Claim against Defendant MECUM, in the sum of $28,487.27, plus default interest from April 6, 2002 at the Past Due Rate as set forth in Note 7, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 7; and

On the Eight Claim against Defendant MECUM, the sum of $44,394.05, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 8, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 8; and

On the Ninth Claim against Defendant MECUM, the sum of $53,372.32, plus default interest from February 9, 2002, at the Past Due Rate as set forth in Note 9, and attorneys' fees in an amount equal to twenty percent (20%) of all amounts due under and pursuant to the terms of Note 9; and

On the Tenth Claim being a First Claim against Defendant KIMBERLY MECUM, pursuant to the terms of the Guaranty of Defendant KIMBERLY MECUM of all of the obligations of MECUM to OFS, said defendant is indebted to OFS for all amounts due and owning under the Notes in the aggregate amount of $382,118.33, plus default interest and attorneys' fees, as follows:

- Under Note 1 in the amount of $5,831.14, plus default interest at the Past Due Rate as defined therein, from 4/19/01;

- Under Note 2 in the amount of $7,183.85, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 3 in the amount of $44,213.79, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 4 in the amount of $8,527.93, plus default at the Past Due Rate as defined therein, interest from 3/2/02;

- Under Note 5 in the amount of $119,541.83, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 6 in the amount of $70,566.15, plus default interest at the Past Due Rate as defined therein, from 2/9/02;

- Under Note 7 in the amount of $28,487.27, plus default interest at the Past Due Rate as defined therein, from 4/6/02;

- Under Note 8 in the amount of $44,394.05, plus default interest at the Past Due Rate as defined therein, from 2/9/02; and

- Under note 9 in the amount of $53,372.32, plus default interest at the Past Due Rate as defined therein, from 2/9/02,

all of the above together with attorneys' fees in an amount equal to twenty percent (20%) of the

aggregate amount of the respective balances due under the Notes as provided for therein.

Dated: New York, New York
       May 17, 2004

                                    DAVIDOFF MALITO & HUTCHER LLP

                                    By: _____
                                         LEWIS M. SMOLEY (LS-4613)
                                    Attorneys for Plaintiff
                                    605 Third Avenue, 34th Floor
                                    New York, New York 10158

00307166.WPD|                          22